SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
BRUCE WECKER (CA Bar No. 78530)
bwecker@hosielaw.com
GEORGE F. BISHOP (CA Bar No. 89205)
gbishop@hosielaw.com
HOSIE RICE LLP
One Market, Spear Tower, 22nd Floor
San Francisco, California 94105
Telephone: (415) 247-6000
Facsimile: (415) 247-6001

ROBERT J. YORIO (CA Bar No. 93178)
yorio@carrferrell.com
COLBY B. SPRINGER (CA Bar No. 214868)
cspringer@carrferrell.com
CARR & FERRELL LLP
2200 Geng Road
Palo Alto, CA 94303
Telephone: (650) 812-3400
Facsimile: (650) 812-3444

*Attorneys for Defendant
Burst.com, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| REALNETWORKS, INC.,<br><br>        Plaintiff/Counterdefendant,<br><br>v.<br><br>BURST.COM, INC.,<br><br>        Defendant/Counterclaimant. | Case No. C-08-0023 MHP<br><br>**ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM**<br><br>**JURY TRIAL DEMANDED** |

Defendant Burst.com, Inc. ("Burst"), answers RealNetworks, Inc.'s ("RealNetworks") First Amended Complaint for Declaratory Judgment (the "Complaint") and counterclaims against RealNetworks as follows:

# BURST'S ANSWER

1. Admitted that this is a declaratory judgment action as described.

## PARTIES

2. Admitted.

3. Admitted with respect to Burst.com, Inc. having been previously known as Instant Video Technologies, Inc.; Burst being organized and existing under the laws of the state of Delaware; and Burst being the assignee of the patents-in-suit. Denied with respect to Burst's principal place of business, which is 1275 4th Street # 191, Santa Rosa, California 95404.

4. Admitted.

5. Admitted.

## JURISDICTION AND VENUE

6. Admitted that Real Networks brings this action under Title 35 of the United States Code with a remedy sought under 28 U.S.C. §§ 2201 and 2202. Denied with respect to RealNetworks being entitled to relief under 28 U.S.C. §§ 2201 and 2202 as more specifically and fully set forth herein.

7. Admitted that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Denied with respect to RealNetworks being entitled to relief under 28 U.S.C. § 2201 as more specifically and fully set forth herein.

8. Admitted.

## EXISTENCE OF AN ACTUAL CONTROVERSY

9. Admitted with respect to the '995, '839, '705, and '202 Patents. Denied with respect to all other patents-in-suit including the '956 patent, the '044 patent, and the '932 patent.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Denied to the extent that it is alleged that Microsoft was the sole patent licensee.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Denied in that Burst never asserted that it had proof that RealNetworks is now infringing either the '956 patent or the '044 patent.

20. Admitted that RealNetworks denies that any of the patents-in-suit are or have been infringed by RealNetworks and that RealNetworks disputes the validity and enforceability of the patents-in-suit.

21. Admitted with respect to the '995, '839, '705, and '202 Patents. Denied with respect to all other patents-in-suit including the '956 patent, the '044 patent and the '932 patent.

22. Admitted with respect to the '995, '839, '705, 'and '202 Patents. Denied with respect to all other patents-in-suit including the '956 patent, the '044 patent and the '932 patent.

## COUNT I
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '995 PATENT

23. Burst incorporates by reference its responses to paragraphs 1-22.

24. Admitted that a true and correct copy of the '995 patent is attached to the Complaint as Exhibit A. In all other respects, denied.

25. Denied.

## COUNT II
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '995 PATENT

26. Burst incorporates by reference its responses to paragraphs 1-25

27. Denied.

28. Denied.

## COUNT III
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '839 PATENT

29. Burst incorporates by reference its responses to paragraphs 1-28.

30. Admitted that a true and correct copy of the '839 patent is attached to the Complaint as Exhibit B. In all other respect, denied.

31. Denied.

## COUNT IV
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '839 PATENT

32. Burst incorporates by reference its responses to paragraphs 1-31.

33. Denied.

34. Denied.

## COUNT V
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '705 PATENT

35. Burst incorporates by reference its responses to paragraphs 1-34.

36. Admitted that a true and correct copy of the '705 Patent is attached to the Complaint as Exhibit C. In all other respects, denied.

37. Denied.

## COUNT VI
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '705 PATENT

38. Burst incorporates by reference its responses to paragraphs 1-37.

39. Denied.

40. Denied.

## COUNT VII
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '932 PATENT

41. Burst incorporates by reference its responses to paragraphs 1-40.

42. Admitted that a true and correct copy of the '932 Patent is attached to the Complaint as Exhibit D. In all other respects, denied.

43. Denied.

## COUNT VIII
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '932 PATENT

44. Burst incorporates by reference its responses to paragraphs 1-43.

45. Denied.

46. Denied.

## COUNT IX
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '202 PATENT

47. Burst incorporates by reference its responses to paragraphs 1-46.

48. Admitted that a true and correct copy of the '202 Patent is attached to the Complaint as Exhibit E. In all other respects, denied.

49. Denied.

## COUNT X
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '202 PATENT

50. Burst incorporates by reference its responses to paragraphs 1-49.

51. Denied.

52. Denied.

## COUNT XI
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '965 PATENT

53. Burst incorporates by reference its responses to paragraphs 1-52.

54. Admitted that a true and correct copy of the '965 Patent is attached to the Complaint as Exhibit F. In all other respects, denied.

55. Denied.

# COUNT XII
# **DECLARATORY JUDGMENT OF INVALIDITY OF THE '965 PATENT**

56.  Burst incorporates by reference its responses to paragraphs 1-55.

57.  Denied.

58.  Denied.

# COUNT XIII
# **DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '044 PATENT**

59.  Burst incorporates by reference its responses to paragraphs 1-58.

60.  Admitted that a true and correct copy of the '044 Patent is attached to the Complaint as Exhibit G.  In all other respects, denied.

61.  Denied.

# COUNT XIV
# **DECLARATORY JUDGMENT OF INVALIDITY OF THE '044 PATENT**

62.  Burst incorporates by reference its responses to paragraphs 1-61.

63.  Denied.

64.  Denied.

# COUNT XV
# **DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '995, '839, '932 '705 PATENTS**

65.  Burst incorporates by reference its responses to paragraphs 1-64.

66.  Denied.

67.  Denied.

68.  Denied.

69.  Denied.

70.  Denied.

71.     Burst admits that the EPO rejected the then-pending claims of Burst's Application No. 90 902 741.9 in an Office Action dated April 22, 1994. In all other respects, denied.

72.     Denied

73.     Burst admits that Lang and Hein became aware of the rejections in the EPO at some point in time. In all other respects, denied.

74.     Burst admits that Lang and Hein first disclosed Walter to the PTO in an Information Disclosure Statement on May 6, 1991. In all other respects, denied.

75.     Denied.

76.     Burst is without knowledge of and on that basis denies the allegations regarding the development, capabilities, and public demonstration of DVI. In all other respects, denied.

77.     Burst admits that it was attempting to build a prototype of its system around September 1990. Burst admits that it adopted DVI for use in certain prototypes. In all other respects, denied.

78     Burst is without knowledge of and on that basis denies the allegations regarding the development and publicization of DVI years before the Burst patents were filed. In all other respects, denied.

79.     Burst is without knowledge of and on that basis denies the allegations regarding nondisclosure of printed publications describing DVI technology that was in development and displayed to the public before the filing of the Burst patents. In all other respects, denied.

80.     Burst admits that in an Office Action, dated April 22, 1994, for Application No. 90 902 741.9, the EPO cited and discussed prior art references including IEEE Transactions on Consumer Electronics, "1988 International Conference on Consumer Electronics, Part 1", 34 (1988) August, No. 3, New York, U.S., pages 838-845; Hildering et al.: "Programmable

Compact Disk Picture Memory and Video Processing System" ("Hildering"); EP-A-0 283 727 ("Parker"); and EP-A-0 082 077 ("Gremillet EP"). In all other respects, denied.

81. Denied.

82. Denied.

Burst denies that RealNetworks is entitled to any relief from Burst and in particular to any of the relief requested in paragraphs 1 through 7 of RealNetworks' Prayer for Relief.

## BURST'S COUNTERCLAIM

In support of its counterclaim against RealNetworks, Burst alleges as follows:

## PARTIES

1. Burst is a corporation organized and existing under the laws of the State of Delaware. Burst maintains its principal place of business at 1275 4th Street # 191, Santa Rosa, California 95404. Burst owns and licenses patents and licenses software.

2. RealNetworks is a corporation organized and existing under the laws of the State of Washington with a principal place of business at 2601 Elliott Avenue, Seattle, Washington.

## JURISDICTION AND VENUE

3. Count I of this counterclaim asserts causes of action for patent infringement under the Patent Act, 35 U.S.C. § 271. This Court has subject matter jurisdiction over Count I by virtue of 28 U.S.C. § 1338(a). Venue is proper in this Court by virtue of 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(b).

4. This Court has personal jurisdiction over RealNetworks because RealNetworks has filed suit in this Court against Burst asserting claims that are substantially related to those asserted by Burst in Count I and because RealNetworks provides infringing products and services in the Northern District of California.

## BACKGROUND

**Burst and the Burst Patents**

5.  Burst was founded in 1988 and incorporated in 1990. Burst, and its predecessors, devoted more than a decade of research and development in the fields of video storage and manipulation, and video delivery over computer networks. Burst invested many tens of millions of dollars developing products utilizing its patented discoveries. Its products both (a) provided a superior user experience in the delivery of video over the Internet and other computer (IP) networks, and (b) significantly increased the operating efficiency of these networks.

6.  Burst's software manages the delivery of video and audio content over a variety of networks, optimizing network efficiency and quality of service. Burst's Burstware suite of software products enables companies to transmit video and audio files at faster-than-real-time speed. Burstware uses momentarily available bandwidth capacity in conjunction with data compression to send more video or audio data to users than the players are consuming in real time. This data is stored on the user's machine (PC or set-top box) for playing on demand, thus isolating the user from noise and interruptions due to network congestion and other network-related interference. The result is high quality, full-motion video and CD-quality audio to the end-user.

7.  Burst owns U.S. and international patents that cover the provision of video delivery at faster-than-real-time rates and that utilize methods of client-server communications to provide for dynamic re-buffering and network optimization. On October 16, 1990, the United States Patent and Trademark Office issued the first of these patents, United States Patent No. 4,963,995 (the "'995 Patent"), titled "Audio/Video Transceiver Apparatus Including Compression Means."

8.      Thereafter, the United States Patent and Trademark Office issued other patents on Burst's technology, including U.S. Patent No. 5,164,839 (the "'839 Patent"), which issued on November 17, 1992; U.S. Patent No. 5,963,202 (the "'202 Patent"), which issued on October 5, 1999; and U.S. Patent No. 5,995,705 (the "'705 Patent"), which issued on November 30, 1999. The '995, '839, '705 and '202 Patents are collectively referred to as the "Burst Patents." Richard A. Lang is the named inventor on three of the Burst Patents, and all of these patents are in the same family. Dr. Nathaniel Polish is the named inventor on the fourth Burst Patent. Burst is the owner of the entire right, title, and interest in the Burst Patents.

9.      The '995, '202, '839 and '705 Patents cover various aspects of receiving, processing and delivering video content. In general, the Burst Patents disclose techniques that enable efficient handling and delivery of video programs, while maintaining the integrity and quality of the content and its playback. Some of the techniques disclosed in the Burst Patents include digitization and compression of audio/video content and storage of the compressed content in memory. The audio/video content can be edited and stored or copied onto other storage media such as hard drives, optical discs or CDs. In addition, the Burst Patents describe transmitting the digitized and compressed audio/video content to other computers or set-top boxes.

10.     After developing its initial prototype machines for the 1991 Consumer Electronics Show ("CES"), Burst worked to bring products and services to the marketplace that utilized certain of the techniques disclosed in its various patent applications. One of those products included a content delivery platform called "Burstware." Burst licensed Burstware to companies that installed it on their own computer servers and client computers to effectuate the efficient delivery of content over various networks. Between 1998 and December 2000, Burst

distributed Burstware enabling high-quality delivery of video programs over the Internet and private networks. Burst distinguished its product from the market leading real-time streaming products of Microsoft and RealNetworks by pointing to the benefits of faster-than-real-time delivery of the content in both quality of user experience and network management efficiencies. Burst described these benefits in detail to both Microsoft and RealNetworks under non-disclosure agreements. Both companies scoffed at the advantages, complaining that no network efficiencies could be obtained since the same number of bits needed to be transmitted over the same time period and that their current systems were adequate for their purposes.

11. Burst's technique of faster-than-real-time delivery of video is now broadly adopted in the industry with management of the bursts of video content based on communication of client status information to the server. This methodology is being incorporated into industry streaming media standards. The method also allows for more efficient use of navigation tools within the video content as taught by the Burst Patents.

12. The '995, '839 and '705 patents were the subject of a previous lawsuit between Burst and Microsoft Corporation. In that lawsuit, Burst accused Microsoft of infringing the '995, '839 and '705 patents. Pursuant to a settlement, Microsoft paid Burst $60,000,000 for a non-exclusive license under Burst-owned patents, including the '995, '839, '705 and '202 Patents. Those patents and one other were the subject of a second lawsuit between Burst and Apple, Inc. Pursuant to a settlement, Apple paid Burst $10,000,000 for a non-exclusive license under Burst-owned patents, including the '995, '839, '705 and '202 Patents.

**RealNetworks and RealNetworks' Infringing Products and Services**

13. Burst's patents were publicly known as early as 1991, when the first of them was publicly described at the Consumer Electronics Show in Las Vegas. Burst also publicized its patents to various licensees in 1992, 1994 and 1996. Burst contacted

RealNetworks directly in 1999, 2000, and 2005.  Certainly no later than the year 1999, RealNetworks became aware of Burst's patents.  Despite this knowledge, RealNetworks proceeded on a path of developing infringing products as detailed below.

14. RealNetworks promotes its RealPlayer and RealPlayer Plus products as media hubs for synchronization with portable media players.  In November 2007, RealNetworks introduced RealPlayer 11, which according to RealNetworks, "gives consumers the ability to easily download millions of videos from thousands of sites across the Web with one click, and then view them later - on or off the PC. Consumers can use the one-click download functionality to view Web video offline on their PC or with RealPlayer Plus transfer video to popular portable media players like the Apple iPod." These products and services utilize faster-than-real-time delivery to a video library and faster-than-real-time delivery to the portable device as claimed in the Burst Patents.

15. Since about 2001, RealNetworks streaming servers, called the Helix server and Helix Mobile Server, have taken advantage of faster-than-real-time transmission in the way claimed by the Burst Patents.  Network management is particularly important in certain bandwidth constrained networks, such as mobile telephone networks.  The patented feature of streaming at faster-than-real-time rates in order to allow for the user to obtain instantaneous viewing of a remotely stored video and randomly move within the video by selectively decompressing portions of the file was also incorporated into the Helix Server products.

## COUNT I
### Patent Infringement

16. RealNetworks has, without authority, consent, right or license, and in direct infringement of the Burst Patents, made, used, offered for sale and/or sold the methods, products and systems claimed in the Burst Patents in this country.  RealNetworks' making,

using, offering for sale, and/or selling of one or more of these methods, products and systems directly infringes one or more claims of the Burst Patents. This conduct constitutes infringement under 35 U.S.C. § 271(a).

17. In addition, RealNetworks has in this country, through its sale of computer software and services, actively induced others to make, use, and/or sell the systems, products and methods claimed in one or more claims of the Burst Patents. This conduct constitutes infringement under 35 U.S.C. § 271(b).

18. RealNetworks has also provided computer software designed for use in practicing one or more claims in the Burst Patents, where the software and/or hardware constitute a material part of the invention and are not staple articles of commerce, and which have no use other than infringing one or more claims of the Burst Patents. RealNetworks has committed these acts with knowledge that the software it makes and sells is specially made for use in a manner that directly infringes the Burst Patents. This conduct constitutes contributory infringement under 35 U.S.C. § 271(c).

19. RealNetworks' infringing conduct is unlawful and willful and will continue unless enjoined by this Court. RealNetworks' willful conduct makes this an exceptional case as provided in 35 U.S.C. § 285.

20. As a result of RealNetworks' infringement, Burst has been damaged, and will continue to be damaged, until RealNetworks is enjoined from further acts of infringement.

21. Burst faces real, substantial and irreparable damage and injury of a continuing nature from RealNetworks' infringement for which Burst has no adequate remedy at law.

WHEREFORE, Burst prays:

      (a)     That this Court find RealNetworks has committed acts of patent infringement under the Patent Act, 35 U.S.C. § 271;

      (b)     That this Court enter judgment that:

           (i)     the Burst Patents are valid and enforceable; and

           (ii)    RealNetworks has willfully infringed the Burst Patents;

      (c)     That this Court issue an injunction enjoining RealNetworks, its officers, agents, servants, employees and attorneys, and any other person in active concert or participation with them, from continuing the acts herein complained of, and more particularly, that RealNetworks and such other persons be permanently enjoined and restrained from further infringing the Burst Patents;

      (d)     That this Court require RealNetworks to file with this Court, within thirty (30) days after entry of final judgment, a written statement under oath setting forth in detail the manner in which RealNetworks has complied with the injunction;

      (e)     That this Court award Burst the damages to which it is entitled due to RealNetworks' patent infringement with both pre-judgment and post-judgment interest;

      (f)     That RealNetworks' infringement of Burst Patents be adjudged willful and that the damages to Burst be increased by three times the amount found or assessed pursuant to 35 U.S.C. § 284;

      (g)     That this be adjudged an exceptional case and that Burst be awarded its attorney's fees in this action pursuant to 35 U.S.C. § 285;

      (h)     That this Court award Burst its costs and disbursements in this civil action, including reasonable attorney's fees; and

      (i)     That this Court grant Burst such other and further relief, in law or in equity, both general and special, to which it may be entitled.

## DEMAND FOR JURY TRIAL

Burst, by its undersigned attorneys, demands a trial by jury on all issues.

DATED: March 25, 2008

/s/ Bruce Wecker
SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
BRUCE WECKER (CA Bar No. 78530)
bwecker@hosielaw.com
GEORGE F. BISHOP (CA Bar No. 89205)
gbishop@hosielaw.com
HOSIE RICE LLP
One Market, Spear Tower, 22nd Floor
San Francisco, California 94105
Telephone: (415) 247-6000
Facsimile: (415) 247-6001

ROBERT J. YORIO (CA Bar No. 93178)
yorio@carrferrell.com
COLBY B. SPRINGER (CA Bar No. 214868)
cspringer@carrferrell.com
CARR & FERRELL LLP
2200 Geng Road
Palo Alto, CA 94303
Telephone: (650) 812-3400
Facsimile: (650) 812-3444

*Attorneys for Defendant/Counterclaimant Burst.com, Inc.*